**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **VINCENT SANDONATO** | } | |
| | } | |
| **Plaintiff** | } | |
| | } | |
| **v.** | } | |
| | } | **C.A. No. 07-451S** |
| **DAYS INN WORLDWIDE, INC.** | } | |
| **and CENDANT HOTEL GROUP,** | } | |
| **INC.** | } | |
| | } | |
| **Defendants** | } | |

**PLAINTIFF VINCENT SANDONATO'S**
**PRETRIAL CONFEENCE STATEMENT**

Plaintiff Vincent Sandonato ("Sandonato") submits this statement pursuant to this Court's notice of pretrial conference dated January 4, 2008.

After obtaining all necessary zoning approvals from the Town of Middletown, in 1991 Sandonato opened his hotel under his personal management as the Royal Plaza Inn ("the hotel").

In 2005 Sandonato entered into negotiations with representatives of Cendant Hotel Group, Inc. ('Cendant") (apparently now known as Wyndham Hotel Group, Inc.) about becoming a Days Inn franchisee. Days Inn Worldwide, Inc. ("Days Inn Worlwide") was a wholly owned subsidiary of Cendant.

Sandonato is prepared to prove that during the negotiations:

1. Cendant's representatives informed Sandonato that among the major benefits that Days Inn Worldwide would provide if he became a Days Inn franchisee would be access to a computerized central reservation service ("CRS") enabling consumers anywhere in the United States the opportunity to make reservations at his hotel via a telephone and internet-based system operated by Days Inn Worldwide which would electronically transmit relevant guest information to Sandonato's hotel.

2. Cendant's representatives repeatedly assured Sandonato that converting his hotel to a Days Inn would significantly improve the hotel's profit.

3. Cendant's representatives assured Sandonato that if he was not satisfied with being a Days Inn franchisee he would be able to terminate his franchise agreement within three years without penalty.

Based on the representations made by Cendant's representatives, Sandonato entered into a 15 year franchise agreement with Days Inn Worldwide and pursuant to the terms of the agreement expended substantial sums in making physical alterations to the hotel, purchasing replacement furniture, fixtures, and equipment, installing new signage, and purchasing inventory and supplies, all to satisfy Days Inn Worldwide's standards.

The hotel began operating as a Days Inn on March 1, 2006. Under the franchise agreement, in consideration for the services which Days Inn Worldwide contracted to provide Sandonato had to pay a substantial initial franchise fee and a whole array of recurring fees including the payment of fees for the use of and access to Days Inn Worldwide's much touted central reservation service.

## CLAIMS

**COUNT 1---Violation of the Rhode Island Franchise Investment Act**

Central to Sandonato's decision to enter into the franchise agreement were the repeated assurances by Cendant's representatives during the negotiations that if Sandonato became dissatisfied with being a Days Inn franchisee he could terminate the agreement within three years without penalty. Sandonato came to learn that the franchise agreement gave Sandonato no such right; he must wait five years in order to terminate without penalty. Cendant's representatives also assured Sandonato that his revenues would increase substantially by becoming a Days Inn franchisee. The fact is that the hotel's revenue decreased by more than $55,000 the first year of operation as a Days Inn.

The Rhode Island Franchise Investment Act, GLRI § 19-28.1-1, et seq., creates a private right of action for any franchisee to sue for damages and rescission for material misrepresentations in connection with the offer of a franchise. GLRI § 19-28.1-17. Sandonato's Count I claim is brought under the Act for the material misrepresentations made by Cendant's representatives which induced him to enter into the franchise agreement.

**COUNT 2---Unconscionability**

The law of Rhode Island and most other jurisdictions recognizes that where a liquidated damages clause is in effect a contract to pay a penalty it will not be enforced. In *Cavanaugh v. Conway*, 36 R.I. 571 (1914), the Rhode Island Supreme Court recognized the distinction between a legitimate liquidated damages clause and an unenforceable penalty clause in a contract. The Supreme court that the words used in the

contract are not at all conclusive as to the character of the stipulation. 36 R.I. at 579. In *Cavanaugh*, the Supreme Court said at page 578:

> The question whether a sum thus stipulated to be paid is a 'penalty' or is 'liquidated damages' is often difficult to determine. It depends, however, upon a construction of the whole instrument, upon the real intention of the parties as ascertained from all the language which they have used, from the nature of the act to be performed, or not to be performed, from the consequences which naturally result from a violation of the contract, and from the circumstances generally surrounding the transaction.



> The question whether a sum thus stipulated to be paid is a 'penalty' or is 'liquidated damages' is often difficult to determine. It depends, however, upon a construction of the whole instrument, upon the real intention of the parties as ascertained from all the language which they have used, from the nature of the act to be performed, or not to be performed, from the consequences which naturally result from a violation of the contract, and from the circumstances generally surrounding the transaction.



In *Liberty Mut. Ins. Co. v. Greenwich Ins. Co*., 417 F.3d 193, 199 (1st Cir. 1995), the First Circuit said:

> In Massachusetts, as in other jurisdictions, a liquidated damages clause is not allowed where damages can readily be ascertained. (citing *A-Z Servicenter, Inc. v. Segall*, 138 N.E.2d 266, 268 (Mass. 1956)).

Sandonato alleges that the requirement in the franchise agreement that he pay $150,000 to Days Inn Worldwide if he terminates prior to the fifth anniversary of the franchise agreement---whether it be in the first year or on the day before the expiration of the five years---is a contract to pay an arbitrary penalty and is thereby void and unenforceable.

**COUNT 3---Reformation of franchise agreement**

Reformation of a contract can occur where there is clear and convincing evidence of a mutual mistake. *Assoc. in Anesthesia v. Mutual Benefit*, 504 A.2d 477, 478 (R.I. 1986); *Hopkins v. Equitable Life Assurance Society of the United States*, 107 R.I. 679, 270 A.2d 915 (1970); *Kornstein v. Almac's, Inc.*, 98 R.I. 318, 201 A.2d 645 (1964). To

warrant reformation it must appear that by reason of a mistake, common to both parties, their agreement fails in some material respect correctly to reflect their prior completed understanding. *Vanderford* v. *Kettelle*, 75 R.I. 130, 142, 64 A.2d 483, 488.

Sandonato is prepared to prove that he and Cendant's representatives reached a clear understanding that the franchise agreement could be terminated without penalty three years after it was executed and therefore seeks reformation accordingly.

**COUNT 4---Breach of Contract (Non-Access to Central Reservation Service)**

A key component of the franchise agreement was the hotel's ability to utilize Days Inn Worldwide's internet based central reservation service. Unbeknownst to Sandonato, Days Inn Worldwide blocked the hotel's access to and use of the central reservation service for the period May 1, 2007 through August 21, 2007. Anyone who during that period attempted to make a reservation at the hotel through the central reservation service for any date, whether it be sometime in the summer or fall of 2007 or in the spring, summer or fall of 2008 was prevented from doing so because the system would wrongly generate a message that the hotel was fully booked on the date or dates selected by the customer. As a result, the hotel lost substantial revenues in 2007 and is projected to lose revenues in 2008 as well. All the while, Sandonato continued to pay Days Inn Worldwide the host of fees under the franchise agreement including the fees for the central reservation service from which it derived no benefit.

**COUNT 5---Breach of Contract (Unnecessary Expenditure of Funds)**

As part and parcel of the franchise agreement, Sandonato agreed to do certain things to meet the standards of Days Inn Worldwide, including replacing furniture, installing new fixtures, installing new signage, and purchasing new supplies and

inventory, all at great expense. The things that Sandonato was obligated to do were memorialized in a punchlist that was made part of the franchise agreement. Sandonato expended more that $500,000 on these items.

Thereafter, Days Inn Worldwide made Sandonato make additional substantial changes in the hotel not specified in the punchlist under threat of declaring Sandonato in breach of the franchise agreement if he didn't comply.

Sandonato claims that Days Inn Worldwide's heavy handed actions breached the terms of the franchise agreement which specifically prohibits Days Inn Worldwide from requiring any renovations not specified in the punchlist for the first three years of operation as a Days Inn, and, after that, permits Days Inn Worldwide to require the franchisee to make only minor renovations.

Sandonato is seeking to recover the damages he incurred as a result of Days Inn Worldwide's breach of contract.

By His Attorney,

/s/Joseph R. Palumbo, Jr.

Joseph R. Palumbo, Jr.
Law Offices of Joseph R. Palumbo, Jr.
RI Bar No. 0405
294 Valley Road
Middletown, RI 02842
Tel: (401) 846-5200
Fax: (401) 848-0984
Email: joseph@palumbolaw.net

Dated: January 29, 2008

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum was filed through the EFC system and will be sent electronically to the registered participant, Jeffrey S. Brenner, at jbrenner@nixonpeabody.com identified on the Notice of Electronic filing (NEF) on the 30th day of January, 2008.

/s/ Joseph R. Palumbo, Jr.